JS-6

cc: FISCAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, N.A., | Case No. 2:24-cv-00211-HDV(SKx) |
| Plaintiff, | **ORDER GRANTING WELLS FARGO'S MOTION FOR DEFAULT JUDGMENT [41]** |
| v. | |
| BC LAW FIRM PA; ADAPTIVE RESOURCES LLC; and DOES 1 through 10, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

This case arises out of an errant transfer. BC Law Firm PA ("BC Law") mistakenly wired $253,805.18 from its Wells Fargo IOLTA account to Adaptive Resources LLC ("Adaptive"). Complaint ¶¶ 1, 10–14 [Dkt. No. 1]. By the time Wells Fargo could restrain the funds, Adaptive had already withdrawn some of the funds. $188,176.64 now remains in the Adaptive account. *Id.* ¶ 1.

Wells Fargo filed the instant interpleader action. After serving Adaptive, Wells Fargo now moves for: (1) default judgment against Adaptive; (2) an Order instructing Wells Fargo to deposit the restrained funds, less Wells Fargo's attorneys' fees and costs; and (3) an order dismissing Wells Fargo from this action. Motion for Default Judgment ("Motion") 1 [Dkt. No. 41]. BC Law opposes only Wells Fargo's request for fees, contending that an interpleader was not appropriate because Adaptive never advanced a competing claim. BC Law's Opposition to Motion at 2–3 [Dkt. No. 44].

The Court disagrees. The Court concludes that Wells Fargo ostensibly faced competing claims to the restrained funds and properly initiated this interpleader action. Accordingly, Wells Fargo is entitled to $24,625.37 in attorneys' fees and $1,289.32 in costs incurred in filing the action and ensuring its release from liability.

## II. BACKGROUND

In September 2023, BC Law notified Wells Fargo that it had erroneously wired $253,805.18 to Adaptive and requested that the transfer be recalled. Complaint ¶¶ 12–13. Wells Fargo restrained the Adaptive account, but Adaptive had already withdrawn funds, such that $188,176.64 remained. *Id.* ¶ 14. Adaptive has since refused to allow Wells Fargo to return the restrained funds. *Id.* ¶ 15.

Wells Fargo filed the instant complaint for interpleader on January 9, 2024. After failing to personally serve Adaptive's agent, Wells Fargo moved for (and received) an order to serve Adaptive through alternative service. [Dkt. Nos. 21, 28]. On August 20, 2024, counsel for Wells Fargo confirmed that he served Adaptive by email. Proof of Service ¶¶ 1–2 [Dkt. No. 29], Ex. A. [Dkt. No. 29-1]. The Clerk entered default against Adaptive on September 22, 2024. [Dkt. No. 34]. Wells Fargo now moves for a default judgment against Adaptive and to interplead the funds, less reasonable attorneys' fees and costs.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). Fed. R. Civ. P. 55(b). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in FRCP 54(c) and 55, as well as Local Rules 55-1 and 55-2. Fed. R. Civ. P. 54(c), 55; C.D. Cal. R. 55-1, 55-2. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and that (5) the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). In exercising discretion, a court must consider several factors (the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, after the Clerk enters default, the defendant's liability is conclusively established and the factual allegations in the complaint are accepted as true, except those pertaining to the amount of damages. *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

### A. Default Against Adaptive

As an initial matter, BC Law does not object to entering default judgment against Adaptive. Opposition at 2. Default judgment is warranted where—as here—the procedural requirements are

met,[1] and the *Eitel* factors weigh in favor of default judgment. With respect to the first *Eitel* factor, Wells Fargo is without a remedy unless default judgment is entered. The second, third, and fourth factors also favor default judgment, as Wells Fargo's Complaint to interplead the restrained funds is reasonable and supported. With respect to the fifth factor, no factual dispute remains that prevents the entry of default judgment. The sixth factor does not preclude entry of judgment either, as Adaptive now has actual notice of the case against it. Declaration of Matthew Follett ("Follett Decl.") ¶ 11 [Dkt. No. 41-1]. Finally, the seventh factor weighs in favor of default judgment as Adaptive's failure to answer renders decision on the merits impossible.

### B. Discharge of Wells Fargo and Attorneys' Fees

Wells Fargo seeks $27,361.52 in reasonable attorneys' fees and $1,289.32 in costs. Motion at 10. BC Law objects to Wells Fargo's fee request, contending that Wells Fargo did not need to interplead where Adaptive never asserted a claim to the funds. Opposition at 2–3.

BC Law's contention is without merit. Wells Fargo's interpleader was proper as it sought to "protect itself against the problems posed by multiple claimants to a single fund." *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 980 (9th Cir. 1999) (citing 28 U.S.C. § 1335) (rejecting appellant's argument that the interpleader statute was not satisfied where "he was the only person to file a claim to the proceeds of the insurance policy" and holding that federal jurisdiction under section 1335 "extends to potential, as well as actual, claims"). After Adaptive began withdrawing the funds and "refused to allow Wells Fargo to debit the Adaptive Account and return the Restrained Proceeds to BC Law," Wells Fargo reasonably believed that it faced multiple potential colorable claims. Complaint ¶¶ 12, 15. *See also Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012) ("[W]e . . . now expressly hold that in order to avail itself of the interpleader remedy, a stakeholder must have a good faith belief that there are or may be colorable competing claims to

---

[1] Wells Fargo has proffered a declaration establishing when and against which party default was entered, identification of the pleading to which default was entered, and that the defaulting party was properly served with notice. Declaration of Matthew Follett ("Follett Decl.") ¶¶ 4–23 [Dkt. No. 41-1]. The Court is satisfied that the defaulting party is not a minor or incompetent person and that the Servicemembers Civil Relief Act does not apply.

the stake. This is not an onerous requirement."); *id.* at 895 (quoting *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008)) (noting that the adverse claim need only have a "minimal threshold level of substantiality"). Indeed, the interpleader action worked as intended, permitting Wells Fargo to resolve a potential dispute between claimants.

Having found that Wells Fargo's interpleader action was appropriate, the Court addresses the appropriateness of the fee request. In an interpleader action, district courts retain discretion to award attorneys' fees and costs to a stakeholder whenever it is fair and equitable to do so. *Gelfgren v. Republic National Life Insurance Co. et al.*, 680 F.2d 79, 81 (9th Cir. 1982); *see Trs. of Dirs. Guild of Am.–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) *opinion amended on denial of reh'g*, 255 F.3d 661 (9th Cir. 2000) ("The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court."). Here, the inequity of forcing a disinterested stakeholder to bear the cost of litigation weighs in favor of recovery of fees. *See Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193–94 (9th Cir. 1962). On the other hand, "because the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Tise*, 234 F.3d at 427.

Wells Fargo requests fees for 120.8 hours of work drafting the complaint, seeking to serve Adaptive, and bringing the instant action. Follett Decl. ¶¶ 29–30, Ex. A [Dkt. No. 41-2]. To determine an award of attorney's fees, courts normally begin by calculating the "lodestar." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). This requires multiplying the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

The Court finds that Plaintiff's counsel's "significantly reduced" hourly rates are appropriate. Motion at 10; Follett Decl. ¶ 26 (requesting $295 per hour for Seth Burack, a partner with approximately fifteen years of experience); *id.* ¶ 25 (requesting $238 per hour for Matthew Follett, a seventh year associate); *id.* ¶ 27 (requesting $145.60 per hour for paralegal William Hendel, with about nine years of experience).

Similarly, the Court finds that Wells Fargo's fee request is centered on compensable tasks. *Tise*, 234 F.3d at 426–27 ("Compensable expenses [for interpleader plaintiffs] include, for example, preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action."). However, the Court finds that Plaintiff's counsel's hours expended were somewhat excessive in light of the nature of the action. *See, e.g.*, Follett Decl. ¶ 30, Ex. A (claiming that Follett spent approximately 30 hours drafting a motion for alternative service). Accordingly, the Court applies a ten percent reduction to address this concern. Wells Fargo's costs for service, document retrieval, and court filings are also reasonable. Follett Decl. ¶ 32, Ex. B [Dkt. No. 41-3].

Applying this reduction to the lodestar, the Court therefore awards $24,625.37 in attorneys' fees and $1,289.32 in costs.

## V.     CONCLUSION

Plaintiff Wells Fargo's Motion is granted. The Court enters default judgment against Adaptive. The Court further orders Wells Fargo to deposit the restrained funds, less $25,914.69, in the Court's registry and dismisses Wells Fargo from the action.

Dated: May 13, 2025

Hernán D. Vera
United States District Judge